## Fleishon v. Zoning Board of Adjustment et al.

*Irvin Stander*, for appellant.

*Abraham L. Freedman*, city solicitor, and *George X. Schwartz*, for appellees.

OLIVER, P. J., October 27, 1954.—This case concerns an irregular interior lot bounded on three sides by row houses. On the fourth side there are some row houses which do not extend the entire length of the lot. On this fourth side, which is approximately 200 feet in length, there is an opening of some 63 feet leading out to a city street.

The owner of this lot applied for a permit to construct a multiple dwelling unit containing 54 apartments, and a permit for outdoor parking. Both permits were granted by the zoning division of the department of licenses and inspections. An appeal was filed with the zoning board of adjustment which upheld the granting of the permits. The zoning board was of the opinion that the zoning administrator could issue these permits as a matter of right under the regulations of the Philadelphia Zoning Ordinance of August 10, 1933, and that there were no questions which required its determination.

The board heard some testimony but refused to hear all of the testimony appellant was prepared to offer. The board also failed to consider various contentions raised by appellant, and adopted the conclusions of the zoning administrator as its own without giving any reasons or any justification for those conclusions.

In summarily treating and dismissing the appeal of Rhoda Fleishon, the zoning board of adjustment committed error. The Act of May 6, 1929, P. L. 1551, 53 PS §3829, under which the City of Philadelphia created the zoning board of adjustment provides:

"The board of adjustment shall have the following powers: (1) To hear and decide appeals where it is

alleged there is error in any order, requirement, decision or determination made by an administrative official in the enforcement of this act, or of any ordinance adopted pursuant thereto. . . . In exercising the above mentioned powers such board may . . . make such order, requirement, decision or determination as ought to be made, and, to that end, *shall have all the powers of the officer from whom the appeal is taken.*" (Italics supplied.)

Upon an appeal taken from any action of an administrative officer, the zoning board of adjustment has the power to consider the entire issue de novo. It is definitely not bound by the determinations of such officer. It is obvious that the legislature, in creating the zoning board and in giving the board such power, meant the power to be exercised. The zoning board of adjustment was not created to be a mere "rubber stamp" for an administrative officer.

The issues are complex in this case, which involves a substantial area and many people. In such a situation the board should have considered carefully the various issues raised and should have set forth the reasons for its conclusions. This it did not do and it is for this reason we are reversing the board and remanding the case for further hearing. As was said in Imperial Asphalt Corporation of Pennsylvania Zoning Case, 359 Pa. 402 (1948) quoted with approval in Lindquist Appeal, 364 Pa. 561 (1950):

"What were the 'grounds of the decision' which moved the zoning authorities? Neither the officer nor the board gave any facts pertinent and material in any inquiry into possible reasons for the conclusion reached. They should have made from the evidence a statement of facts sufficient to show that a judicially exercised discretion, applied to the facts, justified the action, . . . Enough must be stated to enable the court to see that there was due consideration and a

weighing of evidence in its legal relations. . . . There should be sufficient discussion to enable the court, cn appeal, to see that the officer and board appreciated the legal questions raised by the facts."

Perhaps a short discussion of appellant's major contentions will aid the board in better understanding what this court desires. Appellant contends that the proposed project does not meet the requirements of section 2(18)(*a*) of the Philadelphia Zoning Ordinance which provides:

"*Front Yard.* A yard of the full width of the lot and not less in depth than the minimum distance required between the street line and the building setback line in each district."

The Zoning Board of Adjustment dismissed this issue simply by stating, "An examination of the plot plan submitted by the applicant indicates that there is no violation of this provision of the ordinance."

This is inadequate and it would seem to this court to be grossly inaccurate. To merely state a legal conclusion does not aid the court of common pleas in determining the correctness or incorrectness of the board's ruling.

Appellant further maintains that the side-yard requirement of Section 2(18)(*b*) of the ordinance was not met. She admits that a side yard is not required in a "D" residential area, but argues that, where a side yard is present, and it is on the plans for this development, it must conform to the requirements of the ordinance. The zoning administrator considered this area open court and not side yard and the board accepted this determination as conclusive, thus ignoring appellant's contention entirely. The question, of course, is whether or not this area is side yard and, if so, must it and does it conform to the requirements of the ordinance?

Appellant's third major argument is that Section

26(6) of the ordinance requires a board of adjustment certificate for open air parking in all but "A" or "B" residential districts (in which no open air parking is permitted). Section 26(10) states that, where new multiple dwelling units are intended, "there shall be provided on the same lot parking spaces with adequate access to a street or driveway. . . ." Appellant submits the latter section does not supersede the former but that the two are in pari materia and must be read together. Moreover, she argues that the zoning board must determine what constitutes "adequate access". Again, the board dismissed this argument by simply stating a legal conclusion. The reasons for their conclusion were not given. Furthermore, an inspection of the plan indicates a lack of anything reasonably approaching "adequate access".

The appellant further contends that the proposed structure constitutes four buildings, and not one building, and therefore violates the ordinance because of inadequate yard space. The zoning administrator considered the proposed structure one building by applying the converse of a definition in the Building Code.

The board accepted this determination as conclusive without considering the correctness of the administrator's interpretation or the applicability of a definition in the Building Code to a situation involving the zoning ordinance.

A full hearing and a careful study of the facts, and the provisions of the ordinance relating thereto, is absolutely essential to a determination of the issues involved. It is apparent from even a cursory examination of the plans that the proposed development, as now planned, could and probably would result in dangerous fire hazards, undue congestion, serious traffic problems, and a possible infringement upon the rights of way held by owners of the properties surrounding this tract of land. The board apparently

gave scant, if any, attention to these serious problems.

For the above reasons the report of the zoning board of adjustment is obviously inadequate. A determination of the issues involved should have been arrived at only after the most thorough and painstaking consideration.

*Order*

And now, to wit, October 27, 1954, the record is remanded to the zoning board of adjustment for further consideration in accordance with this opinion.